# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| **ALI MOHAMMED SEMREEN AL-KHAWALDEH and FATIMA SOUAD FANASH AL-KHAWALDEH,** § § § § §<br>*Plaintiffs* § | |
| § | |
| **v.** § | **Case No. 1:20-CV-1079-RP** |
| § | |
| **BOYD "SKIP" TACKETT and UTILITY AVIATION, INC.,** § § §<br>*Defendants* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:  THE HONORABLE LEE YEAKEL**
**UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party under Rule 19, filed on January 15, 2021 (Dkt. 42); Plaintiffs' Motion for Partial Summary Judgment on Certain Affirmative Defenses, filed March 2, 2021 (Dkt. 45); Defendants' Motion for Summary Judgment, filed March 12, 2021 (Dkt. 47); and the associated response and reply briefs. The District Court referred the motions to the undersigned Magistrate Judge for Report and Recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas. Dkt. 54.

### I.   General Background

Ali Mohammed Semreen Al-Khawaldeh and Fatima Souad Fanash Al-Khawaldeh ("Plaintiffs") bring this wrongful death and survival action in their individual capacities and on behalf of the estate of their deceased son, Ahmed Ali Mohammed Khalif Al-Khawaldeh, a special

forces helicopter pilot with the Jordanian Air Force who was killed in a helicopter crash in Granger, Texas. On April 13, 2018, the United States Army executed a contract with Brunner Aerospace, LLC ("Brunner"), a private aviation company headquartered in Georgetown, Texas, to provide flight training services to Jordanian military pilots as part of the Army's Security Assistance Training Management Organization program (the "Contract"). Dkt. 47-4.[1] Plaintiffs allege that Brunner's subsidiary, Utility Aviation, Inc. ("Utility"), also headquartered in Georgetown, Texas, was responsible for developing, implementing, and operating the flight training program ("Training Program"). Defendants dispute this and contend that Brunner was the entity in charge of the Training Program.

Al-Khawaldeh was one of the Jordanian pilots participating in the Training Program. He was receiving "MD530 Emergency Refresher Training (Enhanced)" for special operations pilots who flew MD-530F helicopters with the Jordanian Air Force. Dkt. 45-4 at 1. On August 21, 2018, at approximately 12:08 p.m., Al-Khawaldeh and flight instructor Michael Hawley departed Georgetown Municipal Airport on board Hughes Helicopter 369FF for a training exercise. The National Transportation Safety Board Aviation Accident Factual Report shows that about four minutes after departure, Hawley requested a frequency change and began to descend. Dkt. 45-4 at 2. Radar recorded the helicopter traveling at a groundspeed of 90 knots and at altitudes that varied between 0 and 120 feet above ground level over unpopulated areas. *Id.* Around that same time, a witness who was at his home in Granger, Texas, observed a helicopter "rapidly approach his house from the northwest, flying low over a field, about 30 to 40 [feet above ground level], in a nose-down attitude" and became concerned that the helicopter might collide with his house. *Id.* at 2-3. The witness reported that the helicopter rapidly climbed up and over the power lines that bordered

---

[1] Brunner's Chief Executive Officer John Brunner signed the Contract on behalf of Brunner, and the United States Army Contracting Command signed it on behalf of the Army. Dkt. 47-4 at 2.

his street and flew out of his view. *Id.* at 3. The helicopter then hit a power line and crashed in a cotton field a few miles from the witness' residence, killing both Al-Khawaldeh and Hawley.

Plaintiffs allege that Hawley negligently engaged in an unauthorized high-speed, low-level "nap-of-the-earth flight"[2] that was the proximate cause of the helicopter crash and Al-Khawaldeh's death. Dkt. 31 ¶ 12. Plaintiffs assert negligence and gross negligence against Utility and its president, Boyd A. "Skip" Tackett.[3] They allege that Utility and Tackett are vicariously liable for Hawley's negligence and gross negligence as Hawley's employer and/or the entity responsible for hiring, supervising, and deploying Hawley in the Training Program. Plaintiffs also argue that Utility and Tackett are individually liable for hiring and/or deploying Hawley in the Training Program "and failing to supervise the training operations to ensure that Hawley adhered to safety standards and the applicable flight training syllabus." Dkt. 31 ¶¶ 19-24.

Defendants seek dismissal under Federal Rule of Civil Procedure 12(b)(7), arguing that Brunner is a necessary party but cannot be joined due to the applicable statute of limitations. Defendants also move for summary judgment, arguing that Plaintiffs' negligence claims fail because Utility had no duty to Al-Khawaldeh and, in the alternative, that the government contract defense bars Plaintiffs' claims. Plaintiffs move for partial summary judgment as to the government contractor defense and the defense of contributory negligence on the part of Al-Khawaldeh.

---

[2] "Nap-of-the-earth flights "are a very low-altitude flight course used in military operations to avoid enemy detection and attack in a high-threat environment." Dkt. 31 ¶ 12 n.1.

[3] Tackett is an officer in both Utility and its parent company, Brunner. Plaintiffs originally filed this suit in state court, but Tackett removed it to federal court under the Federal Officer Removal Statute, 28 U.S.C. § 1442(a)(1). *Al-Khawaldeh v. Tackett*, No. 311,162-B (146th Dist. Ct., Bell County, Tex. July 26, 2019) (Dkt. 1-2 at 3-13). Subsequently, United States District Judge Alan Albright denied plaintiffs' motion to remand on the basis that removal was proper under § 1442(a)(1) because Tackett raised the government contractor defense. Dkt. 24 at 3. On October 27, 2020, Judge Albright granted Plaintiffs' motion to transfer this case to the Austin division for the convenience of the parties and witnesses pursuant to 28 U.S.C. § 1404(a).

## II.     Legal Standards

### A.  Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) allows dismissal for "failure to join a party under Rule 19." Rule 19 provides for the joinder of all parties whose presence in a case is required for the fair and complete resolution of the dispute at issue. It further provides for the dismissal of litigation that should not proceed in the absence of parties that cannot be joined. *HS Res., Inc. v. Wingate*, 327 F.3d 432, 438 (5th Cir. 2003).

Determining whether to dismiss a case for failure to join an indispensable party under Rule 12(b)(7) requires a two-step inquiry. *Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court must determine under Rule 19(a) whether a person should be joined to the lawsuit. *Wingate*, 327 F.3d at 438. If joinder is warranted, then the person will be brought into the lawsuit. *Id.* at 439. If such joinder is not feasible, "the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed." FED. R. CIV. P. 19(b). "While the party advocating joinder has the initial burden of demonstrating that a missing party is necessary, after 'an initial appraisal of the facts indicates that a possibly necessary party is absent, the burden of disputing this initial appraisal falls on the party who opposes joinder.'" *Hood*, 570 F.3d at 628 (quoting *Pulitzer-Polster v. Pulitzer*, 784 F.2d 1305, 1309 (5th Cir. 1986)).

### B.  Rule 56(c)

Summary judgment shall be rendered when the pleadings, the discovery and disclosure materials, and any affidavits on file show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable

4

jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Washburn*, 504 F.3d at 508. A court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *see also Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita*, 475 U.S. at 586. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Unsubstantiated assertions, improbable inferences, and unsupported speculation also are not competent summary judgment evidence. *Id.* The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports its claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

On cross-motions for summary judgment, the Court reviews each party's motion independently, in the light most favorable to the non-moving party. *Amerisure Ins. Co. v. Navigators Ins. Co.*, 611 F.3d 299, 304 (5th Cir. 2010).

### III. Analysis

The Court addresses Defendants' motion to dismiss before considering the parties' motions for summary judgment.

#### A. Defendants' Rule 12(b)(7) Motion to Dismiss

Defendants argue that Utility's parent company, Brunner, is a necessary party because Brunner may be deprived of the ability to defendant itself against an indemnification claim from Defendant Tackett if Plaintiffs succeed on their negligence claims. Because Brunner cannot be joined due to the expiration of the statute of limitations applicable to Plaintiffs' claims,[4] Defendants ask the Court to dismiss the action under Rule 12(b)(7).

As noted above, determining whether to dismiss a case for failure to join an indispensable party under Rule 12(b)(7) requires a two-step inquiry. *Hood*, 570 F.3d at 628. First, the court must determine under Rule 19(a) whether a party should be joined. *Wingate*, 327 F.3d at 438. Rule 19(a)(1) provides:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>
> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

---

[4] The Texas statute of limitations for wrongful death provides that: "A person must bring suit not later than two years after the day the cause of action accrues in an action for injury resulting in death. The cause of action accrues on the death of the injured person." TEX. CIV. PRAC. & REM. CODE ANN. § 16.003(b) (West 2005). Thus, Plaintiffs needed to file suit against Brunner on or before August 21, 2020.

FED. R. CIV. P. 19(a)(1). The Fifth Circuit has noted that Rule 19 "militate[s] in favor of a highly practical, fact-based decision." *Pulitzer-Polster*, 784 F.2d at 1309. "Whether a person is 'indispensable,' that is, whether a particular lawsuit must be dismissed in the absence of that person, can only be determined in the context of particular litigation." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 118 (1968).

Defendants argue that Brunner is a necessary party because Brunner has an interest in the subject of this action and is so situated that disposing of the action in its absence may impair Brunner's ability to defend itself in subsequent litigation. Specifically, Defendants argue that: "At all times relevant to the lawsuit, Tackett was acting in his capacity as an employee for Brunner and was under Brunner's authority." Dkt. 42 at 6. Thus, Defendants contend that if the case proceeds without Brunner, and Plaintiffs obtain a judgment on their claims against Tackett, Tackett will have grounds to seek indemnification from Brunner because Tackett was acting in his capacity as a Brunner employee. If Tackett seeks indemnification from Brunner subsequent to this litigation, Defendants contend that the principle of collateral estoppel will bar Brunner from attacking the finding of liability that would underlie Tackett's indemnification claim.

Assuming without deciding that Defendants' assertions are true, the Court rejects Defendants' contention that Brunner is a necessary party. First, "[t]he fact that the existing Defendants may have some right of reimbursement, contribution, or indemnity against a non-party does not make the nonparty indispensable." *Bates v. Laminack*, 938 F. Supp. 2d 649, 660 (S.D. Tex. 2013).

> It has long been the rule that it is not necessary for all joint tortfeasors to be named as defendants in a single lawsuit. . . . The Advisory Committee Notes to Rule 19(a) explicitly state that "a tortfeasor with the usual 'joint-and-several' liability is merely a permissive party to an action against another with like liability."

*Temple v. Synthes Corp., Ltd.*, 498 U.S. 5, 7 (1990) (citation omitted). Rule 19 does not require joinder of a non-party against whom a party might have a claim for contribution or indemnity. *See*

7

*Nottingham v. Gen. Am. Commc'ns Corp.*, 811 F.2d 873, 880 (5th Cir. 1987) (stating that "it is well-established" that Rule 19 does not require the joinder of joint tortfeasors, principal and agent, or persons against whom a party has a claim for contribution); *WBCMT 2007-C33 Blanco Retail, LLC v. Salfiti*, No. SA-13-CV-716-XR, 2014 WL 325407, at *6 (W.D. Tex. Jan. 29, 2014) ("Federal Rule of Civil Procedure 19 does not require joinder of persons against whom a party has a claim for contribution."). Nor does Rule 19 require joinder of "parent and subsidiary corporations who may be jointly and severally liable." 7 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1623 (3d ed. 2021 Update). The fact that Tackett may seek indemnification from Brunner does not make Brunner an indispensable party under Rule 19(a)(1)(B).

Even if the Court found Brunner to be a necessary party under Rule 19, it would not recommend dismissing this case because "in equity and good conscience the action should proceed among the existing parties." FED. R. CIV. P. 19(b). In determining whether to dismiss a case under Rule 19(b), courts consider the following factors:

1. prejudice to an absent party or others in the lawsuit from a judgment;
2. whether the shaping of relief can lessen prejudice to absent parties;
3. whether adequate relief can be given without participation of the party; and
4. whether the plaintiff has another effective forum if the suit is dismissed.

*Wingate*, 327 F.3d at 439. "Pragmatic and equitable considerations control the Rule 19(b) analysis." *Lone Star Indus., Inc. v. Redwine*, 757 F.2d 1544, 1552 (5th Cir. 1985).

The Court finds that all four factors weigh against dismissing this case. First, Brunner cannot show that it will be prejudiced if this case proceeds without it because it has failed to demonstrate that it would be collaterally estopped from defending itself in a subsequent suit between it and Tackett. Collateral estoppel "precludes relitigation of only those issues actually litigated in the

8

original action, whether or not the second suit is based on the same cause of action." *Houston Pro. Towing Ass'n v. City of Houston*, 812 F.3d 443, 447 (5th Cir. 2016). Plaintiffs have not sued Brunner and are not seeking to hold Tackett liable for his actions as an employee of Brunner; rather, Plaintiffs' claims are based on the actions of Utility and Tackett in his capacity as president of Utility. Thus, Brunner's negligence is not at issue in this case

Because Plaintiffs are suing only Utility and Tackett in his capacity as a Utility employee, factors two and three also weigh against dismissal. Regarding the final factor, all parties agree[5] that Plaintiffs will not have an adequate remedy if this case is dismissed because the statute of limitations applicable to their negligence claims has expired. *See Lone Star Indus.*, 757 F.2d at 1549 (noting that no "adequate remedy" would be available to the plaintiff if lawsuit were dismissed because statute of limitations had run on plaintiff's claims). The Court also notes that Plaintiffs are pursuing this negligence suit on behalf of their deceased son in federal court after Defendants removed from their chosen forum. Applying the Rule 19(b) analysis, the Court finds that in equity and good conscience, this action should proceed among the existing parties.

For these reasons, Defendants' Motion to Dismiss under Rule 12(b)(7) should be denied.

### B. Defendants' Motion for Summary Judgment

Defendants argue that they are entitled to summary judgment on Plaintiffs' negligence claims because Utility and Tackett owed no duty of care to Al-Khawaldeh. Alternatively, Defendants argue that the government contract defense bars Plaintiffs' claims.

#### 1. Duty of Care

Plaintiffs allege that Utility and Tackett are individually and vicariously liable for Hawley's negligence and gross negligence in this case. Under Texas law, to prevail on a negligence cause of

---

[5] *See* Defendants' Response, Dkt. 42 at 13 (admitting that "Plaintiffs would not have an adequate remedy if the action were dismissed for non-joinder").

action, the plaintiff must prove that (1) the defendant had a legal duty owed to the plaintiff, (2) the defendant breached that duty, and (3) damages proximately resulted from that breach. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." *Id.*

Defendants contend that Utility and Tackett owed no duty to Al-Khawaldeh because "the party responsible for the performance of the Contract, the retention and actions of Hawley acting as flight instructor for the Contract, and the accident flight was Brunner, not Utility." Dkt. 47 at 11; *see also* Brunner Dep. (Dkt. 47-3) 152:3-153:15. In support of this argument, Defendants rely heavily on the fact that Brunner, not Utility, executed the underlying Contract with the Army to perform the Training Program. *See* Dkt. 52-4 at 2. Defendants argue that Utility was not authorized to perform the Training Program, and also lacked the requisite certifications to do so.

Defendants also rely on deposition testimony from Brunner CEO John Brunner and from Tackett's second deposition to support their argument that Utility was not involved in the Training Program. Defendants acknowledge that Tackett served as both Chief Operations Officer of Brunner and president of Utility, but they contend that "all activities performed by Tackett as to flight instruction for the Contract" were performed in his role as COO of Brunner, not in his capacity as president of Utility. Dkt. 47 at 9; Second Tackett Dep. (Dkt. 47-2) at 3:16-23. Defendants also claim that Hawley performed the training flights on behalf of Brunner, not Utility. Brunner Dep. (Dkt. 47-3) at 22:23-23:3. Based on this evidence, Defendants argue that "there is no genuine issue of material fact that Utility, or Tackett in his role as the president of Utility, played a part in the program or the accident flight and neither Utility nor Tackett owed a legal duty to Al-Khawaldeh in this capacity." *Id.* at 10-11.

10

Defendants ignore substantial summary judgment evidence supporting Plaintiffs' allegations that Utility was responsible for the Training Program. This includes official accident reports filed with the Federal Aviation Authority San Antonio Flight Standards District Office, which state that "Utility Aviation" owned and operated the helicopter involved in the crash and that Tackett was employed by "Utility Aviation. Inc." Dkt. 55-2 at 5, 8, 10.

Plaintiffs also have submitted uncontroverted evidence showing that Utility, not Brunner, leased the helicopter involved in the crash. *See* Aircraft Master Lease Agreement ("This Aircraft Master Lease Agreement is made band entered into by Capt. Ken D'Attilin ('Lessor'), and Utility Aviation, Inc. ('Lessee')"). Dkt. 55-3 at 3. The Court finds the Lease Agreement competent summary judgment evidence to support Plaintiffs' claims.

In addition, Plaintiffs rely on Tackett's testimony during his pre-suit deposition indicating that Utility was responsible for the Training Program and the flight at issue, and that Hawley was an employee of Utility. Tackett Dep., Dkt. 49-2. That deposition includes the following exchange between Plaintiffs' counsel and Tackett:

> Q. And what is your affiliation with Utility 21 Aviation?
> A. I'm currently the president of the company.[6]
> 
> \* \* \*
> 
> Q. How did you become involved with Utility Aviation?
> A. I was hired by John Brunner from Brunner Aerospace back in January of 2016 to come aboard and help run the company for the aviation operations.[7]
> Q. Was Mr. Hawley the instructor pilot that was killed in the crash?
> A. Yes, sir.
> Q. And who employed Mr. Hawley?
> A. Utility Aviation.[8]

---

[6] Dkt. 49-2 at 6:20-22.

[7] *Id.* at 7:5-9.

[8] *Id.* at 21:4-8.

11

* * *

Q. Now, for itself, Utility Aviation, what type entity is it?

A. We are the aviation operation arm of Brunner. So anything involving flying, helicopters, airplanes, things of that nature, is what Utility does.[9]

* * *

Q. And I think you started to tell me. What are the business purposes of Utility Aviation?

A. Again, anything that Brunner Aerospace or Utility comes under contract to do that involves actual aviation execution is what we do.

Q. Okay. So if it has to do with aviation operations, it's something that you do for and on behalf of Brunner Aerospace?

A. Yes, sir.[10]

* * *

Q. Was Utility aircraft the operator of the aircraft when you were engaged in this instructional activity?

A. Say that one more time, please?

Q. Was Utility aircraft the operator?

A. Of [N530FU, the helicopter involved in the crash]?

Q. Yes, sir.

A. Yes, sir. At the time yes, sir. Utility Aviation; that's what threw me.

Q. Yes, sir, Utility Aviation. Did I say U.A.?

A. You said Utility aircraft. That's --

Q. Utility Aviation.

A. Yes, sir.[11]

Plaintiffs contend that they chose to sue Utility and Tackett in his role as president of Utility based on this testimony. Defendants argue that "any interpretation" of Tackett's testimony "as supporting the fact that this flight was performed by Utility, not Brunner . . . was a result of the imprecise and vague questioning of Plaintiffs' counsel." Dkt. 47 at 2 n.1. The questions, however,

---

[9] *Id.* at 8:3-7.

[10] *Id.* at 9:2-10.

[11] *Id.* at 40:9-21.

12

were clear and direct. Tackett's testimony supports Plaintiffs' allegations that Hawley was employed by Utility, Utility was involved in the operation of the flight at issue, and Tackett oversaw the flight in his capacity as an officer of Utility. In addition, while Defendants rely on testimony from Tackett's second deposition and the deposition of John Brunner to contradict Tackett's original testimony that Utility was responsible for the Training Program, contradictory testimony simply creates a fact issue as to which entity is the responsible party.

Plaintiffs also rely on evidence Utility was Hawley's employer. *See* Dkt. 49-12 at 2 (Hawley's employment contract stating that the agreement was "between Utility Aviation, Inc., A Brunner Aerospace Company ('Company') and Michael W. Hawley ('Pilot')"); Dkt. 49-11 at 47 (Hawley's paycheck stating that Utility was Hawley's employer); *id.* at 14 (Hawley's resume stating that Utility was his employer); *id.* at 2 (Hawley's flight record file labeled "Utility Aviation"); Dkt. 49-13 at 8 (Hawley's "Instructor Comments" for the fatal crash recorded on a Utility form).

Plaintiffs further rely on Defendants' statements indicating that Utility was involved in the Training Program. For example, Utility admitted in its Answer to Plaintiffs' First Amended Complaint that "both Tackett and Utility played roles in the flight training program, and that Tackett was responsible for the retention of Michael Hawley." Dkt. 36 ¶ 8. While Defendants attempt to downplay this admission, it is competent summary judgment evidence supporting Plaintiffs' assertions that Utility was involved in the Training Program. Defendants further admit in their supplement to their motion for summary judgment that "Utility and Brunner are related entities, and that they share certain facilities, resources and personnel." Dkt. 64 at 2.

Finally, the fact that Brunner executed the contract with the Army is not dispositive as to whether Utility was involved in the Training Program. Plaintiffs have produced communications between Brunner and the Army indicating that Utility would be involved in the Training Program.

13

*See* Dkt. 49-5 at 3 (stating that Brunner "and its affiliated or wholly owned subsidiaries are presenting this RESPONSE to PRESOLICITATION"); *id.* at 5 (stating that "Brunner Aero will utilize the certifications of its wholly owned subsidiary (Utility Aviation, Inc.) to execute the 14 CFR Part 135 certified operations and conduct instruction"); 49-6 at 3 (email signed by Tackett using his Utility signature block as President of Utility). As Plaintiffs point out, the fact that Utility did not sign the Contract and may not have been authorized to perform the Contract does not preclude the possibility that Utility was involved in the performance of the Contract.

Based on all of the foregoing evidence, the Court finds that Plaintiffs have produced sufficient evidence to create a fact issue as to whether Utility and Tackett can be held liable for the fatal helicopter crash. Accordingly, the Court recommends against finding that Plaintiffs' negligence claims fail as a matter of law.

**2. Government Contractor Defense**

Defendants next argue that if the Court disagrees with their contentions that Utility had nothing to do with the Training Program, they are entitled to summary judgment under the government contractor defense set forth by the United States Supreme Court in *Boyle v. United Tech., Inc.*, 487 U.S. 500 (1988).

The government contractor defense "shields contractors from tort liability for products manufactured for the Government in accordance with Government specifications, if the contractor warned the United States about any hazards known to the contractor but not to the Government." *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996) (citing *Boyle*, 487 U.S. at 512). In *Boyle*, the Supreme Court recognized that applying state law to hold government contractors liable for design defects in military equipment might significantly conflict with federal interests and policy. *Id.* at 511-12. The Court reasoned that in such cases the cost of the court judgment ultimately

would be passed through to the government, abrogating the immunity otherwise enjoyed by the government in those cases. Such a result was intolerable, and in those circumstances federal policy displaced state law. *Id.* Thus, the Court held that a government contractor could not be liable "for design defects in military equipment" when "(1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States." *Id.* at 512. The first two elements of the defense "assure that the government, and not the contractor, is exercising discretion in selecting the design. The third element is necessary to eliminate any incentive that this defense may create for contractors to withhold knowledge of risks." *Stout v. Borg-Warner Corp.*, 933 F.2d 331, 334 (5th Cir. 1991)

Although the government contractor defense originally was limited to product liability cases involving contractors providing defective products to the United States military,[12] it has been applied to a broader class of cases. *See, e.g.*, *In re Katrina Canal Breaches Litig.*, 620 F.3d 455 (5th Cir. 2010) (analyzing government contractor defense where plaintiffs sued contractor that provided engineering, construction, and management services to U.S. Army Corps of Engineers, alleging that contractor's negligent actions in fulfilling the contract caused flood damage resulting from Hurricane Katrina). Therefore, "the government contractor defense does not necessarily apply only to claims labeled 'design defect.'" *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 297 (5th Cir. 2020). "Rather, the question is whether subjecting a contractor to liability under state tort law would create a significant conflict with a unique federal interest." *Hudgens v. Bell*

---

[12] *See Lessin v. Kellogg Brown & Root*, No. H-05-01853, 2006 WL 3940556, at *4 (S.D. Tex. June 12, 2006) (finding that government contractor defense did not apply where contractor did not provide government with defective weapons used in combat but instead with commercial truck convoy service); *Fisher v. Halliburton*, 390 F. Supp. 2d 610, 616 (S.D. Tex. 2005) ("Defendants herein have cited no case in which the § 2680(j) 'combatant activities' exception or any other exception to the FTCA's waiver of sovereign immunity has been held to bar . . . claims against a defense contractor other than in situations in which the contractor has provided allegedly defective products, and this Court's research has found none.").

*Helicopters/Textron*, 328 F.3d 1329, 1334 (11th Cir. 2003). Whether the defense applies to a particular claim "depends only upon whether *Boyle's* three conditions are met with respect to the particular product feature upon which the claim is based." *Latiolais*, 951 F.3d at 297.

Accordingly, to demonstrate that they are entitled to the government contractor defense, Defendants must show that (1) the government approved reasonably precise specifications for the services or products at issue; (2) the Defendants' services or products conformed to those specifications; and (3) the Defendants warned the government about any dangers in the use of the services or products that were known to the Defendants but not to the government. *Boyle*, 487 U.S. 512. As an affirmative defense, Defendants bear the burden of proof to establish the government contractor defense. *Bailey v. McDonnell Douglas Corp.*, 989 F.2d 794, 802 (5th Cir. 1993). "For a defendant to obtain summary judgment on an affirmative defense, it must establish beyond dispute all of the defense's essential elements." *Bank of La. v. Aetna U.S. Healthcare Inc.*, 468 F.3d 237, 241 (5th Cir. 20056).

Plaintiffs do not dispute that the Contract and related performance work statement and training syllabus contained reasonably precise specifications for the Training Program at the time of the helicopter crash. This satisfies the first *Boyle* factor. Plaintiffs argue, however, that Defendants have failed to meet the second and third factors.

"Under the law of this Circuit, the government contractor defense does not apply unless the contractor's product conforms to government specifications." *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 246 (5th Cir. 1990). With respect to the second factor, Defendants contend they have shown that the flight at issue was taken in accordance with the government-approved specifications because "[t]he flight in question was the kind of flight that the government approved and authorized for the training program, and there is no indication that the actions of the occupants

16

deviated from that approved procedure." Dkt. 47 at 20. But this is precisely what Plaintiffs dispute in this case. Plaintiffs allege that at the time of the accident, Hawley was engaged in an unauthorized high-speed, low-level nap-of-the-earth flight that caused the fatal crash. Dkt. 31 ¶ 12. In support of this argument, Plaintiffs rely on the National Transportation Safety Board factual report, an incorporated witness statement, and radar data indicating that the helicopter was flying at low levels at high speeds for an extended period of time and crashed into a power line 36 feet above the ground. Dkts. 45-4 at 2-3, 45-5 at 2. Plaintiffs also rely on deposition testimony in which Tackett and John Brunner acknowledge that low-level nap-of-the-earth flights were not authorized under the Contract. Dkt. 45-6 at 79:16-23; Dkt. 45-3 at 44:1-6, 47:6-20. Defendants dispute that Hawley was engaged in a nap-of-the-earth flight and suggest that he could have been engaged in an authorized low-level flight due to a possible in-flight emergency, bit they identify no evidence to support this theory.

Accordingly, Defendants have failed to demonstrate that there is no genuine issue of material fact that their actions meet all three elements of the government contractor defense because they have not satisfied the second element. *See Mitchell*, 913 F.2d at 248-49 (finding that government contractor defense did not apply where contractor failed to conform to the government's design specifications). Defendants' Motion for Summary Judgment on this basis should be denied.

### C. Plaintiffs' Partial Motion for Summary Judgment

Plaintiffs move for summary judgment on Defendants' affirmative defenses of the government contractor defense and the defense of contributory negligence on the part of Al-Khawaldeh.

#### 1. Government Contractor Defense

Plaintiffs argue that they are entitled to summary judgment on Defendants' government contractor defense because Defendants have failed to establish all elements of the defense. As discussed above, the Court agrees that Defendants have failed to come forward with sufficient

17

evidence to conclusively prove that they have met all three elements and are not entitled to summary judgment as to this defense. The Court also agrees, however, that Plaintiffs have not conclusively proven that Hawley was engaged in an unauthorized low-level nap-of-the-earth flight. Further discovery and expert opinion testimony may be needed for the jury to determine whether Hawley was flying negligently. The Court notes that initial expert disclosures are not due until two weeks after the District Court rules on the instant motions. Dkt. 40 at 2.

Issues that require "the determination of the reasonableness of the acts and conduct of the parties under all the facts and circumstances of the case, cannot ordinarily be disposed of by summary judgment." *Gross v. Southern Rwy. Co.*, 414 F.2d 292, 296 (5th Cir. 1969); *see also Michaels v. Avitech, Inc.*, 202 F.3d 746 (5th Cir. 2000) (finding that fact issues precluded summary judgment as to whether pilot was negligent in deciding to fly private airplane despite adverse weather conditions). Accordingly, Plaintiff is not entitled to summary judgment on the government contractor affirmative defense.

### 2. Contributory Negligence

Finally, Plaintiffs argue that they entitled to summary judgment on Defendants' defense of contributory negligence on the part of Al-Khawaldeh. Again, the Court finds that granting summary judgment on the issues of negligence or contributory negligence would be premature in this case. Summary judgment generally is inappropriate as to negligence or contributory negligence, since "even where there is no dispute as to the facts, it is usually for the jury to decide whether the conduct in question meets the reasonable man standard." *Matthews v. Ashland Chem., Inc.*, 703 F.2d 921, 925-26 (5th Cir. 1983). Accordingly, Plaintiffs' Motion for Partial Summary Judgment should be denied.

## IV. Recommendation

Based on the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** (1) Defendants' Rule 12(b)(7) Motion to Dismiss for Failure to Join a Party under Rule 19 (Dkt. 42), (2) Plaintiffs' Motion for Partial Summary Judgment on Certain Affirmative Defenses (Dkt. 45), and (3) Defendants' Motion for Summary Judgment (Dkt. 47).

**IT IS ORDERED** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## V. Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985).

**SIGNED** on July 26, 2021.

_____
SUSAN HIGHTOWER
UNITED STATES MAGISTRATE JUDGE